## SETTLEMENT AGREEMENT

This Agreement is entered into effective as of the 1st day of September, 2021, by and between Light of the World Gospel Ministries, Inc. ("LOTW" or "Church") and the Village of Walthill, Nebraska (the "Village" or "Walthill"), (each, a "Party" and collectively, the "Parties").

WHEREAS, the Church wishes to construct a facility for worship and ministry on property it owns within the Village;

WHEREAS, the Church filed a civil action against the Village, Case No. 8:18-cv-312 (D. Neb.) (the "LOTW Case"), alleging violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.*, the First Amendment to the Constitution of the United States, the Civil Rights Act of 1964, 42 U.S.C. § 1983, and Nebraska open meeting and recordkeeping statutes;

WHEREAS, the United States of America filed a civil enforcement action against the Village alleging violations of RLUIPA, Case No. 8:20-cv-69 (D. Neb.) (the "DOJ Case");

WHEREAS, the Village denies any liability or fault for the claims asserted in either lawsuit, and specifically denies it is liable to the Church;

WHEREAS, the Parties seek to resolve the LOTW Case via this Agreement and a separate Consent Decree entered into by the Parties and submitted to the Court for approval in the LOTW Case (the "Consent Decree"), which Consent Decree is contingent, among other things, on the approval of a contemporaneously submitted Consent Order in the DOJ Case (the "Consent Order");

WHEREAS, the Consent Decree in the LOTW Case and the Consent Order in the DOJ Case are each effective for a period of three (3) years (the "Supervision Period");

WHEREAS, the Parties desire to extend by contract certain rights and duties also provided for in the Consent Decree for a longer term than the Supervision Period;

NOW, THEREFORE, in exchange for the mutual promises and other good and valuable consideration stated herein, including without limitation contemporaneously entering into the Consent Decree and undertaking the duties set forth thereunder, and the Consent Order, acknowledged by the Parties to be satisfactory and adequate, the Parties agree as follows:

1. **Effective Date.** This Agreement shall be effective upon signing by both Parties and entry by both the court in the LOTW Case and the court in the DOJ Case of the Consent Decree and the Consent Order, respectively (the "Effective Date"). Should the court in either case fail to approve the Consent Decree or the Consent Order, this Agreement shall be null and void and of no effect.


EXHIBIT 8

2. **Definitions.** The definitions contained in Paragraphs 5 through 9 of the Consent Decree are hereby incorporated into this Agreement, as though fully set forth herein. Any reference in this Agreement to an enumerated exhibit is a reference to that enumerated exhibit of the Consent Decree.

### REQUIREMENT OF GOOD FAITH

3. The Church and the Village shall at all times act in good faith to effectuate the purposes of this Agreement and to carry out all requirements of this Agreement.

4. In the event of a failure by one Party (the "Responding Party") to act in good faith or to perform in a timely manner any act required by this Agreement or otherwise to act in conformance with any provision in this Agreement, the other Party (the "Complaining Party") shall provide written notice of such violation to the Responding Party. The Responding Party shall then have 30 days to cure any deficiency. If the Responding Party fails to cure, the Complaining Party may commence an action in a court of competent jurisdiction to impose any remedy authorized at law or equity, including but not limited to an order requiring performance of such act or deeming such act to have been performed.

### BUILDING PLANS

5. The Parties have prepared drawings of the exterior frontage of the Main Street side of the multi-use building the Church plans to build on lots 7 through 12 of the Main Street Properties (the "New Building"), attached to the Consent Decree as Exhibit 2. The floor plan of the New Building is attached to the Consent Decree as Exhibit 3.

6. The Church and the Village agree that the following design elements are necessary for the Church to build the New Building:

    a. The design shall include ingress/egress exterior doors on the parts of the building designated on Exhibit 2 and Exhibit 3 of the Consent Decree as the Commercial Businesses of a "bookstore" and a "café." The Church entrance shall have conspicuous exterior signage that clearly identifies the Church entrance, and the Commercial Businesses shall have conspicuous exterior signage that clearly identifies the commercial nature of the businesses in those parts of the building, so that anyone on Main Street in Walthill immediately would recognize the Church entrance and the entrances to the businesses.

    b. The design shall include columns, or other vertical elements, on the exterior of the building that extend from the sidewalk to the roof as a further visual means of separating the Commercial Businesses from the entrance to the Church.

    c. The requirements of Sections 504.08(1)(A) and 504.08(1)(C) of the Village's zoning ordinance shall not apply to the design of the building, and any brick façade on the building shall extend from the sidewalk no more than 48 inches up the exterior wall of the building.

7. The Village agrees that the documents attached to the Consent Decree as Exhibit 2 and Exhibit 3 meet the requirements set forth in Paragraph 6, above, including subparts a. through c., with respect to LOTW's plans to build the New Building.

8. The Church shall build the New Building pursuant to Exhibit 2 and Exhibit 3 of the Consent Decree, unless changes are jointly agreed to by the Parties.

9. The reasonable fees and costs of the design professional for the preparation of Exhibit 2 and Exhibit 3 shall be paid equally by the Church and the Village.

**CHURCH'S DUTIES—BUILD AND OPERATE BUSINESSES; INDEMNITY**

10. The Church affirms its desire and intention to Operate two Commercial Businesses in the New Building as a ministry to the community, and to do so for as long as it uses the New Building for Church Purposes. In addition to using the New Building for Church Purposes, the Church will Operate no less than two Commercial Businesses in the New Building as set forth in this Agreement.

11. The Church may begin to use the New Building for Church Purposes as soon as one of the two Commercial Businesses begins to Operate, so long as the second Commercial Business begins to Operate within twelve (12) months of the first day the Church uses the New Building for Church Purposes. Thereafter, the Church may continue to use the New Building for Church Purposes so long as it Operates two Commercial Businesses in the spaces indicated as a café and a bookstore on Exhibit 3 of the Consent Decree in accordance with the terms of this Agreement and the subparts to this Paragraph:

a. The Church will Operate two Commercial Businesses in the New Building for ten (10) years (the "Term"). The Term will begin the first day one of the two Commercial Businesses begins to Operate as long as the second Commercial Business begins to Operate within twelve (12) months of that day, otherwise the Term will begin the first day the second Commercial Business begins to Operate.

b. During the Term, in addition to Operating Commercial Businesses in the spaces indicated as a café and a bookstore on Exhibit 3, the Church may use those same spaces for Church Purposes, as well. If during the Term the Church ceases to Operate a Commercial Business in one of the spaces indicated as a café and a bookstore on Exhibit 3 of the Consent Decree: 1) the Church will be unable to use that space until a Commercial Business resumes Operation in that space, except the Church can use the Church's Main Street entrance for entering and exiting, etc., and it can use the bathrooms; provided, however, that if the Church nevertheless uses the space for any purpose before it resumes Operation of a Commercial Business in that space, such use shall constitute a breach of this Agreement and any permit issued for the New Building pursuant to the Consent Decree; 2) the time required for the Term will be tolled until a Commercial Business resumes Operation in that space; and 3) the Church may use the rest of the New Building for Church Purposes regardless of whether one or more Commercial Businesses are Operating in the New Building. If the Church ceases to Operate a Commercial Business in one of the spaces indicated as a café and a bookstore on Exhibit 3 but

does not use the space for any purpose before it resumes Operation of a Commercial Business in that space, the Church shall not be considered to have breached this Agreement or any permit issued for the New Building. The same provisions apply if the Church ceases to operate both Commercial Businesses in the spaces indicated on Exhibit 3 of the Consent Decree.

      c.    If during the Term the Church continues to Operate the Commercial Businesses but in a particular week it does not Operate the Commercial Businesses for the full 20 hours and is not otherwise permitted to Operate for less than 20 hours that week, the Church may choose to make up the missed Operating hours within the four subsequent weeks.

      d.    At the end of the Term the Church may at its discretion continue to Operate one or both Commercial Businesses in the New Building but is not required to do so to use the entire New Building for Church Purposes indefinitely.

12.    Although Exhibit 2 and Exhibit 3 of the Consent Decree indicate that the Commercial Businesses contemplated by the Church will be a bookstore and a café, the Church may at any time substitute other Commercial Businesses in these spaces, so long as the substituted Commercial Business or Commercial Businesses comply with the provisions of Paragraphs 7-9 of the Consent Decree and Paragraph 6 of this Agreement, including subparts.

13.    The Parties agree that the parking lot as shown on Exhibit 3 of the Consent Decree on lots 16 and 17 of the Main Street Properties is a permitted accessory use or structure under the Village's zoning ordinance and that the Church may construct and use the parking lot before, during and/or after it constructs the New Building.

14.    The Church shall indemnify and hold harmless the Village from any and all third-party claims, actions, or disputes arising out of or related to damages caused by the Church's contemplated demolition or construction activities.

## VILLAGE'S DUTIES—PERMIT APPROVAL

15.    The Church has submitted the following requests for permits (the "Permit Requests") related to the construction of the New Building:

      a.    Building Permit Application (Exhibit 4 of the Consent Decree) seeking approval to demolish all existing structures on the Main Street Properties.

      b.    Building Permit Application (Exhibit 5 of the Consent Decree) seeking approval to build a multi-use building including a church complex with two businesses and a parking lot.

      c.    Special Use Permit Application (Exhibit 6 of the Consent Decree) seeking indefinite approval for its multi-use building including a church complex with two businesses and parking lot.

    d. Application for Zoning Permit (Exhibit 7 of the Consent Decree) seeking approval for a metal building with brick facia and cement panels for a church complex with two businesses.

  16. The Village shall approve the Permit Requests subject only to the terms of the Consent Decree and this Agreement and the following additional terms:

    a. The time restrictions listed in footnote 1 of the Building Permit Applications (Exs. 4 and 5 of the Consent Decree), which limit the time in which work must begin and limit the time that work may be discontinued, shall not apply to the work requested by the Building Permit Applications (Exs. 4 and 5 of the Consent Decree). The Church must begin the work approved on the Building Permit Application (Ex. 4 of the Consent Decree) seeking approval to demolish all existing structures on the Main Street Properties no later than two years from the latter of the date of issuance or the date the Consent Decree becomes effective. The Church must begin the work approved on the Building Permit Application (Ex. 5 of the Consent Decree) seeking approval to build a multi-use building including a church complex with two businesses and a parking lot no later than three and one half (3.5) years from the latter of the date of issuance or the date the Consent Decree becomes effective.

    b. The Special Use Permit Application (Ex. 6 of the Consent Decree) and the Application for Zoning Permit (Ex. 7 of the Consent Decree) shall be contingent upon the Church maintaining Operation of the Commercial Businesses in accordance with this Agreement until the end of the Term. Upon completion of the Term the Church may at its discretion continue to Operate one or both Commercial Businesses in the New Building but is not required to do so to use the entire New Building for Church Purposes indefinitely.

  17. Once granted, the Village may not revoke its approval of any of the Permit Requests except upon the failure of the Church to cure any violation of the Church's duties regarding the New Building as set forth in this Agreement, nor may the Village revoke any permits related to the Future Building for failure of the Church to cure any violation of the Church's duties regarding the New Building as set forth in this Agreement. The Village may not revoke its approval of any of the Permit Requests if the Church is in compliance with its duties regarding the New Building as set forth in this Agreement. The Church may challenge or appeal in a court of competent jurisdiction revocation of any of the Permit Requests as a violation of this Agreement and/or applicable law.

  18. The Village affirms the Permit Requests are all the forms, requests or other documents it requires for the demolition, construction and uses requested by the Church.

  19. The Village shall not enact or amend any ordinance or other regulation or requirement inconsistent with the terms of this Agreement or that would prevent the Church from using the Main Street Properties as a multi-use facility or for Church Purposes as set forth in this Agreement.

  20. The Church may not sell, assign, or, in any way, including by operation of law, transfer any of the Church's rights or obligations under this Agreement.

## DUTIES REGARDING FURTHER DEVELOPMENT

21. The Parties anticipate that the Church will seek to engage in further development on one or more of Lot Nos. 13 through 15 of the Main Street Properties. For a period of ten (10) years from the Effective Date of this Agreement, the Church shall have the right under this Agreement to begin said development. The Church anticipates this development will take the form of an additional building (the "Future Building").

22. When the Church decides to develop one or more of Lot Nos. 13 through 15 of the Main Street Properties as a Future Building, it shall submit appropriate permit applications for the Future Building, including drawings similar to Exhibit 2 and Exhibit 3 of the Consent Decree.

23. The Village shall not bear any costs for the Future Building, including without limitation design and architectural costs.

24. The Future Building will use similar design, signage, and architectural features as the New Building and will also comply with the requirements of Paragraphs 7-9 of the Consent Decree and Paragraphs 6 and 14 of this Agreement, including subparts, except that instead of the bookstore and café contemplated in Exs. 2 and 3 of the Consent Decree, the Future Building shall conform to one of the three Options appearing below as subparts to this Paragraph.

    a. Option 1: Two Commercial Businesses. In the same manner as the New Building, the Future Building shall be built with two Commercial Businesses, with a minimum of 22% of the total square footage of the Future Building used for said Commercial Businesses, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building.

    b. Option 2: One Commercial Business. Instead of two Commercial Businesses, the Church may elect to build and Operate a single Commercial Business in the Future Building, with a minimum of 22% of the total square footage of the Future Building being used for said Commercial Business, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building.

    c. Option 3: Community Youth Center. A social, learning and recreational center intended primarily for use by children ages 11 to 18 years to promote their physical, social, emotional and spiritual well-being and development (a "Community Youth Center") shall be considered to be a Commercial Business for the purposes of this Agreement. The Church may Operate a Community Youth Center in the Future Building, with a minimum of 22% of the total square footage of the Future Building being used for said Community Youth Center, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building, except that while the Community Youth Center must be open to the public, it need not sell goods or services to be considered a Commercial Business under this Agreement.

    d. The Church may at any time substitute any Option listed in this Paragraph for or any other Option listed in this Paragraph. The Church may at any time change any Commercial Business in the Future Building to another Commercial Businesses in the same space(s), so long as the new Commercial Business or Commercial Businesses comply with the provisions of Paragraphs 7-9 of the Consent Decree and Paragraph 6 of this Agreement, including subparts.

    25. The terms "Option 1," "Option 2," and "Option 3" in this Paragraph refer to the Options described in the preceding Paragraph 24. The Church may begin to use the Future Building for Church Purposes as soon as one of the two Commercial Businesses begins to Operate under Option 1, so long as the second Commercial Business begins to Operate within twelve (12) months of the first day the Church uses the Future Building for Church Purposes; or as soon as the one Commercial Business begins to Operate under Option 2; or as soon as the Community Youth Center begins to Operate under Option 3. Thereafter, the Church may continue to use the Future Building for Church Purposes so long as it Operates one or two Commercial Businesses or a Community Youth Center in accordance with the terms of this Agreement and the subparts to this Paragraph:

    a. The Church will Operate one or two Commercial Businesses or a Community Youth Center in the Future Building in accordance with Option 1, Option 2, or Option 3, for eight (8) years (the "Future Term"). Under Option 1, the Future Term will begin the first day one of the two Commercial Businesses begins to Operate as long as the second Commercial Business begins to Operate within twelve (12) months of that day, otherwise the Future Term will begin the first day the second Commercial Business begins to Operate. Under Option 2 the Future Term will begin the first day the one Commercial Business begins to Operate. Under Option 3 the Future Term will begin the first day the Community Youth Center begins to Operate.

    b. During the Future Term, in addition to Operating one or more Commercial Businesses or a Community Youth Center in a designated space(s) in the Future Building, the Church may use that same space(s) for Church Purposes, as well. If during the Future Term the Church ceases to Operate one or more Commercial Businesses or a Community Youth Center in the Future Building: 1) the Church will be unable to use that space designated for the Commercial Business or Community Youth Center until a Commercial Business or a Community Youth Center resumes Operation in that space, except the Church can use any Main Street entrance for entering and exiting, etc., and it can use any bathrooms; provided, however, that if the Church nevertheless uses the space for any purpose before it resumes Operation of a Commercial Business or Commercial Businesses or a Community Youth Center in that space, such use shall constitute a breach of this Agreement and of any permit issued for the Future Building pursuant to the Consent Decree; 2) the time required for the Future Term will be tolled until a Commercial Business or a Community Youth Center resumes Operation in that space; and 3) the Church may use the rest of the Future Building for Church Purposes regardless of whether one or more Commercial Businesses or a Community Youth Center are Operating in the Future Building. If the Church ceases to Operate a Commercial Business or Commercial Businesses or a Community Youth Center in the Future Building but does not use the space designated for

same for any purpose before it resumes Operation of a Commercial Business or Commercial Businesses or a Community Youth Center in that space, the Church shall not be considered to have breached this Agreement or any permit issued for the Future Building. The same provisions apply if the Church ceases to operate both Commercial Businesses under Option 1.

        c.     If during the Future Term the Church continues to Operate the one or two Commercial Businesses or a Community Youth Center but in a particular week it does not Operate the one or two Commercial Businesses or a Community Youth Center for the full 20 hours and is not otherwise permitted to Operate for less than 20 hours that week, the Church may choose to make up the missed Operating hours within the four subsequent weeks.

        d.     At the end of the Future Term the Church may at its discretion continue to Operate one or two Commercial Businesses or a Community Youth Center in the Future Building but is not required to do so to use the entire Future Building for Church Purposes indefinitely.

26. If the proposed Future Building complies with the requirements of Paragraphs 7-9 of the Consent Decree, and Paragraphs 6 and 14 of this Agreement, including subparts, the Village shall approve the Church's permit applications related to the Future Building. The Village may not revoke its approval of any of the permit applications except upon the failure of the Church to cure any violation of the Church's duties regarding the Future Building as set forth in this Agreement, nor may the Village revoke any permits related to the New Building for failure of the Church to cure any violation of the Church's duties regarding the Future Building as set forth in this Agreement. The Village may not revoke its approval of any of the permit applications if the Church is in compliance with its duties regarding the Future Building as set forth in this Agreement. The Church may challenge or appeal in a court of competent jurisdiction revocation of any of the permit applications as a violation of this Agreement and/or applicable law.

27. The Village shall not enact or amend any ordinance or other regulation or requirement inconsistent with the terms of this Agreement or that would prevent the Church from using the Main Street Properties as a multi-use facility or for Church Purposes as set forth in this Agreement.

## FORCE MAJEURE AND DISCLAIMER OF WAIVER OF RIGHTS

28. Nothing in this Agreement prevents the Church from demolishing the existing structures on the Main Street Properties or constructing the New Building or Future Building if it is temporarily unable to do so, or from using the New Building or the Future Building for Church Purposes if one or more Commercial Businesses or a Community Youth Center in the New Building or Future Building is temporarily unable to Operate, due to Acts of God, such as fire, flood, or other damage; a natural disaster; a government-ordered closure; a court order or injunction sought by an individual or entity other than the Village; repairs to the property or equipment; or a similar reason beyond the Church's control. Nor will such event(s) activate the tolling provisions of Paragraphs 11(b) or 25(b). However, business or financial reasons or exigencies unrelated to said Acts of God, etc., shall not qualify under this Paragraph.

29. The Parties agree that the Church does not waive any of its constitutional, statutory or other rights, such as its rights under RLUIPA, by executing this Agreement or any other agreement. The Parties also agree that the Village does not waive any of its constitutional, statutory or other rights, including its defenses and its authority to enact and enforce laws, ordinances, or regulations, by executing this Agreement or any other agreement.

30. **Injunctive Relief Available.** The Parties agree that the rights and duties set forth in this Agreement are not redressable solely through damages. Each party agrees that the other Party will suffer irreparable harm should this Agreement be breached. Injunctive relief is available to either Party to enforce the terms of this Agreement.

31. This Agreement shall inure to the benefit of and is binding on the Church's and the Village's successors, transferees, heirs, and assigns.

32. The Church and the Village agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Agreement is illegal or invalid.

33. **Non-Disparagement.** No Party to this Agreement, or representative of any Party, shall in any way denigrate or disparage any other Party, any Party's employees or agents, or Party representative hereto by communicating, whether orally or in writing, any false, untruthful, or materially misleading representations regarding any other party hereto or their representatives.

34. **No Admission of Liability.** Nothing contained in this Agreement shall be construed as an admission of any liability, all such liability having been expressly denied.

35. **Entire Agreement.** This Agreement, including its references to the Consent Decree, contains the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties on all subjects in any way related to this Agreement. No oral understandings, statements, promises, or inducements contrary to or inconsistent with the terms of this Agreement exist. This Agreement is subject to modification, waiver, or addition only by means of a writing signed by the Parties.

36. **Severability.** If any provision of this Agreement is found to be illegal, invalid, or unenforceable, such finding will not affect any other provision of this Agreement. If possible, any such provision shall be modified to preserve the intent of the Parties and render enforceable the provisions of this Agreement.

37. **Construction.** The Parties warrant and represent that they have jointly drafted this Agreement, each with the assistance of their own counsel, and, accordingly, they agree that the Agreement shall not be construed against either Party solely because such Party is deemed to be the author of the Agreement. The Parties further represent and warrant that they have each read this Agreement, understand the same, and execute it voluntarily and upon their own best judgment. Any section headings, captions or similar labels contained in this Agreement are

inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

38. **Authority.** Each person signing this Agreement represents and warrants that he or she has the authority to execute the Agreement and to thereby bind the Party on whose behalf he or she has signed the Agreement.

Each Party to this Agreement has signified its agreement to the terms set forth above by signing where indicated below.

VILLAGE OF WALTHILL, NEBRASKA

_____
Michael Grant, Chairperson

LIGHT OF THE WORLD GOSPEL MINISTERIES, INC.

_____ 9-1-2021
William Paul Malcomson, Pastor