UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| Light of the World Gospel Ministries, Inc. ) | Case No. 8:18-cv-312 |
| ) | |
| Plaintiff, ) | |
| v. ) | **CONSENT DECREE** |
| ) | |
| Village of Walthill, Nebraska, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

WHEREAS, Plaintiff Light of the Word Gospel Ministries, Inc. ("LOTW" or the "Church") wishes to construct a facility for worship and ministry on property it owns within the Village of Walthill, Nebraska (the "Village") (LOTW and the Village are each a "Party" and collectively the "Parties");

WHEREAS, the Church initiated this action alleging claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc et seq.), the First Amendment to the United States Constitution, the Civil Rights Act of 1964 (42 U.S.C. § 1983), and Nebraska open meeting and recordkeeping statutes;

WHEREAS, the Village seeks to preserve the commercial character of its C-1 commercial district in accordance with its comprehensive plan and zoning laws;

WHEREAS, the Village denies any liability or fault for the claims asserted in this matter, and specifically denies it is liable to the Church;

WHEREAS, the Parties seek to resolve this matter via this Consent Decree and a separate contractual agreement entered between the Parties contemporaneously herewith;

NOW, THEREFORE, in resolution of this action, and with the agreement of the Parties, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1

## JURISDICTION

1. This Court has jurisdiction over the Parties and the subject matter of this action, and the Court has authority to enforce and administer the terms of this Consent Decree.

2. The terms and conditions of this Consent Decree shall be binding on the Church, the Village, and the Court for a period of three years from the date this Consent Decree is entered and becomes effective (the "Supervision Period"). Immediately thereafter, and without any further action by this Court or the Parties hereto, this Consent Decree and the Court's jurisdiction related hereto shall be null, void, and rescinded.

3. This Court shall retain exclusive jurisdiction over this Consent Decree for the duration of the Supervision Period solely to enforce its terms and to resolve any disputes arising under it, should such need arise. The Church and the Village shall endeavor to resolve informally any differences regarding interpretation of or compliance with this Consent Decree prior to seeking relief from this Court.

## EFFECTIVE DATE

4. This Consent Decree shall become effective when both the following have occurred: (1) this Court has approved this Consent Decree and entered it on the docket, and (2) the Court in *United States of America v. Village of Walthill, Nebraska*, Case No. 8:20-cv-69 (D. Neb.) (the "DOJ Case"), has approved and entered on its docket the contemporaneously proposed consent order in the DOJ Case. Should the court in the DOJ Case not approve the proposed consent order before it, this Consent Decree shall be null and void and of no effect, even if fully executed and entered on this Court's docket.

## DEFINITIONS

5.     The term "Consent Decree" shall mean this Consent Decree, including its attachments, exhibits, or appendices.

6.     The term "Main Street Properties" as used herein shall mean that real property in the Village of Walthill, Nebraska, owned by the Church on lots 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 of the block now bordered on the south by Main Street, on the west by Hayden Street, on the north by Farrington Avenue, and on the east by Tallman Street. A diagram showing the Main Street Properties and the related lot numbers is attached hereto as Exhibit 1.

7.     The term "Commercial Business" shall mean an establishment separate and distinct from other activities of the Church, which may be operated by the Church and may be either a component of the Church's ministries, a nonprofit organization affiliated with the Church, or a separately owned business enterprise, or which may be owned or operated by another individual or entity at the discretion of the Church, that sells goods or services to the public for money through a retail storefront fronting Main Street in Walthill, Nebraska on any of the Main Street Properties.

8.     The term "Operate" shall mean, at a minimum, being open to the public and available to conduct Commercial Business for no less than 20 hours per week, excluding federal and state holidays, on the days of the week and during the hours to be determined by the Church, changes to which the Church shall report to the Village weekly.

9.     The term "Church Purposes" shall include, without limitation, religious worship, ministry, outreach, education, childcare, and the conduct of services such as weddings, funerals and baptisms. For the purposes of this Consent Decree, "Church Purposes" shall be broadly construed to include any activity which a church might use a property for in support of its religious mission other than a Commercial Business.

## REQUIREMENT OF GOOD FAITH

10. The Church and the Village shall at all times act in good faith to effectuate the purposes of this Consent Decree and to carry out all requirements of this Consent Decree.

11. In the event of a failure by one Party (the "Responding Party") to act in good faith or to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision in this Consent Decree, the other Party (the "Complaining Party") shall provide written notice of such violation to the Responding Party. The Responding Party shall then have 30 days to cure any deficiency. If the Responding Party fails to cure, the Complaining Party may move this Court to enforce this Consent Decree and to impose any remedy authorized at law or equity, including but not limited to an order requiring performance of such act or deeming such act to have been performed.

## BUILDING PLANS

12. The Parties have prepared drawings of the exterior frontage of the Main Street side of the multi-use building the Church plans to build on lots 7 through 12 of the Main Street Properties (the "New Building"), attached hereto as Exhibit 2. The floor plan of the New Building is attached hereto as Exhibit 3.

13. The Church and the Village agree that the following design elements are necessary for the Church to build the New Building:

    a. The design shall include ingress/egress exterior doors on the parts of the building designated on Exhibit 2 and Exhibit 3 as the Commercial Businesses of a "bookstore" and a "café." The Church entrance shall have conspicuous exterior signage that clearly identifies the Church entrance, and the Commercial Businesses shall have conspicuous exterior signage that clearly identifies the commercial nature of the businesses in those parts of the building, so

4

that anyone on Main Street in Walthill immediately would recognize the Church entrance and the entrances to the businesses.

       b.     The design shall include columns, or other vertical elements, on the exterior of the building that extend from the sidewalk to the roof as a further visual means of separating the Commercial Businesses from the entrance to the Church.

       c.     The requirements of Sections 504.08(1)(A) and 504.08(1)(C) of the Village's zoning ordinance shall not apply to the design of the building, and any brick façade on the building shall extend from the sidewalk no more than 48 inches up the exterior wall of the building.

    14.     The Village agrees that the documents attached as Exhibit 2 and Exhibit 3 meet the requirements set forth in Paragraph 13, above, including subparts a. through c., with respect to LOTW's plans to build the New Building.

    15.     The Church shall build the New Building pursuant to Exhibit 2 and Exhibit 3, unless changes are jointly agreed to by the Parties.

    16.     The reasonable fees and costs of the design professional for the preparation of Exhibit 2 and Exhibit 3 shall be paid equally by the Church and the Village.

**CHURCH'S DUTIES—BUILD AND OPERATE BUSINESSES; INDEMNITY**

    17.     The Church affirms its desire and intention to Operate two Commercial Businesses in the New Building as a ministry to the community, and to do so for as long as it uses the New Building for Church Purposes. In addition to using the New Building for Church Purposes, the Church will Operate no less than two Commercial Businesses in the New Building as set forth in this Consent Decree, and agrees to continue such Operation of Commercial

Businesses in the future as set forth in the Settlement Agreement between the Parties attached hereto as Exhibit 8 (the "Settlement Agreement").

18. The Church may begin to use the New Building for Church Purposes as soon as one of the two Commercial Businesses begins to Operate, so long as the second Commercial Business begins to Operate within twelve (12) months of the first day the Church uses the New Building for Church Purposes. Thereafter, the Church may continue to use the New Building for Church Purposes so long as it Operates two Commercial Businesses in the spaces indicated as a café and a bookstore on Exhibit 3 in accordance with the terms of this Consent Decree and the Settlement Agreement and the subparts to this Paragraph:

a. The Church will Operate two Commercial Businesses in the New Building for ten (10) years (the "Term"). The Term will begin the first day one of the two Commercial Businesses begins to Operate as long as the second Commercial Business begins to Operate within twelve (12) months of that day, otherwise the Term will begin the first day the second Commercial Business begins to Operate.

b. During the Term, in addition to Operating Commercial Businesses in the spaces indicated as a café and a bookstore on Exhibit 3, the Church may use those same spaces for Church Purposes, as well. If during the Term the Church ceases to Operate a Commercial Business in one of the spaces indicated as a café and a bookstore on Exhibit 3: 1) the Church will be unable to use that space until a Commercial Business resumes Operation in that space, except the Church can use the Church's Main Street entrance for entering and exiting, etc., and it can use the bathrooms; provided, however, that if the Church nevertheless uses the space for any purpose before it resumes Operation of a Commercial Business in that space, such use shall constitute a breach of this Consent Decree and of any permit issued for the New Building

pursuant hereto; 2) the time required for the Term will be tolled until a Commercial Business resumes Operation in that space; and 3) the Church may use the rest of the New Building for Church Purposes regardless of whether one or more Commercial Businesses are Operating in the New Building. If the Church ceases to Operate a Commercial Business in one of the spaces indicated as a café and a bookstore on Exhibit 3 but does not use the space for any purpose before it resumes Operation of a Commercial Business in that space, the Church shall not be considered to have breached this Consent Decree or any permit issued for the New Building pursuant hereto. The same provisions apply if the Church ceases to operate both Commercial Businesses in the spaces indicated on Exhibit 3.

   c. If during the Term the Church continues to Operate the Commercial Businesses but in a particular week it does not Operate the Commercial Businesses for the full 20 hours and is not otherwise permitted to Operate for less than 20 hours that week, the Church may choose to make up the missed Operating hours within the four subsequent weeks.

   d. At the end of the Term the Church may at its discretion continue to Operate one or both Commercial Businesses in the New Building but is not required to do so to use the entire New Building for Church Purposes indefinitely.

  19. Although Exhibit 2 and Exhibit 3 indicate that the Commercial Businesses contemplated by the Church will be a bookstore and a café, the Church may at any time substitute other Commercial Businesses in these spaces, so long as the substituted Commercial Business or Commercial Businesses comply with the provisions of Paragraphs 7-9 and 13, including subparts.

  20. The Parties agree that the parking lot as shown on Exhibit 3 on lots 16 and 17 of the Main Street Properties is a permitted accessory use or structure under the Village's zoning

ordinance and that the Church may construct and use the parking lot before, during and/or after it constructs the New Building.

21. The Church shall indemnify and hold harmless the Village from any and all third-party claims, actions, or disputes arising out of or related to damages caused by the Church's contemplated demolition or construction activities.

### VILLAGE'S DUTIES—PERMIT APPROVAL

22. The Church has submitted the following requests for permits (the "Permit Requests") related to the construction of the New Building:

- Building Permit Application (Exhibit 4) seeking approval to demolish all existing structures on the Main Street Properties.

- Building Permit Application (Exhibit 5) seeking approval to build a multi-use building including a church complex with two businesses and a parking lot.

- Special Use Permit Application (Exhibit 6) seeking indefinite approval for its multi-use building including a church complex with two businesses and parking lot.

- Application for Zoning Permit (Exhibit 7) seeking approval for a metal building with brick facia and cement panels for a church complex with two businesses.

23. The Village shall approve the Permit Requests subject only to the terms of this Consent Decree and the Settlement Agreement entered between the Parties contemporaneously with this Consent Decree and the following additional terms:

   a. The time restrictions listed in footnote 1 of the Building Permit Applications (Exs. 4 and 5), which limit the time in which work must begin and limit the time that work may be discontinued, shall not apply to the work requested by the Building Permit

Applications (Exs. 4 and 5). The Church must begin the work approved on the Building Permit Application (Ex. 4) seeking approval to demolish all existing structures on the Main Street Properties no later than two years from the latter of the date of issuance or the date this Consent Decree becomes effective. The Church must begin the work approved on the Building Permit Application (Ex. 5) seeking approval to build a multi-use building including a church complex with two businesses and a parking lot no later than three and one half (3.5) years from the latter of the date of issuance or the date this Consent Decree becomes effective.

   b. The Special Use Permit Application (Ex. 6) and the Application for Zoning Permit (Ex. 7) shall be contingent upon the Church maintaining Operation of the Commercial Businesses in accordance with this Consent Decree and the Settlement Agreement until the end of the Term. Upon completion of the Term the Church may at its discretion continue to Operate one or both Commercial Businesses in the New Building but is not required to do so to use the entire New Building for Church Purposes indefinitely.

  24. Once granted, the Village may not revoke its approval of any of the Permit Requests except upon the failure of the Church to cure any violation of the Church's duties regarding the New Building as set forth in this Consent Decree, nor may the Village revoke any permits related to the Future Building for failure of the Church to cure any violation of the Church's duties regarding the New Building as set forth in this Consent Decree. The Village may not revoke its approval of any of the Permit Requests if the Church is in compliance with its duties regarding the New Building as set forth in this Consent Decree. The Church may challenge or appeal revocation of any of the Permit Requests as a violation of this Consent Decree and applicable law. The Village nonetheless may revoke its approval of the Permit

9

Requests if either this Court or the court in the DOJ Case fails to approve its respective consent decree or order.

25. The Village affirms the Permit Requests are all the forms, requests or other documents it requires for the demolition, construction and uses requested by the Church.

26. The Village shall not enact or amend any ordinance or other regulation or requirement inconsistent with the terms of this Consent Decree or that would prevent the Church from using the Main Street Properties as a multi-use facility or for Church Purposes as set forth in this Consent Decree.

27. The Church may not sell, assign, or, in any way, including by operation of law, transfer any of the Church's rights or obligations under this Consent Decree.

### DUTIES REGARDING FURTHER DEVELOPMENT

28. The Parties anticipate that the Church will seek to engage in further development on one or more of Lot Nos. 13 through 15 of the Main Street Properties. The Church anticipates this development will take the form of an additional building (the "Future Building").

29. When the Church decides to develop one or more of Lot Nos. 13 through 15 of the Main Street Properties as a Future Building, it shall submit appropriate permit applications for the Future Building, including drawings similar to Exhibit 2 and Exhibit 3.

30. The Village shall not bear any costs for the Future Building, including without limitation design and architectural costs.

31. The Future Building will use similar design, signage, and architectural features as the New Building and will also comply with the requirements of Paragraphs 7-9, 13, and 21, above, including subparts, except that instead of the bookstore and café contemplated in Exs. 2

and 3, the Future Building shall conform to one of the three Options appearing below as subparts to this Paragraph.

        a.      Option 1: Two Commercial Businesses. In the same manner as the New Building, the Future Building shall be built with two Commercial Businesses, with a minimum of 22% of the total square footage of the Future Building used for said Commercial Businesses, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building.

        b.      Option 2: One Commercial Business. Instead of two Commercial Businesses, the Church may elect to build and Operate a single Commercial Business in the Future Building, with a minimum of 22% of the total square footage of the Future Building being used for said Commercial Business, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building.

        c.      Option 3: Community Youth Center. A social, learning and recreational center intended primarily for use by children ages 11 to 18 years to promote their physical, social, emotional and spiritual well-being and development (a "Community Youth Center") shall be considered to be a Commercial Business for the purposes of this Consent Decree. The Church may Operate a Community Youth Center in the Future Building, with a minimum of 22% of the total square footage of the Future Building being used for said Community Youth Center, which the Church shall Operate on the same terms and in the same manner as the Commercial Businesses in the New Building, except that while the Community Youth Center must be open to the public, it need not sell goods or services to be considered a Commercial Business under this Consent Decree.

d. The Church may at any time substitute any Option listed in this Paragraph for or any other Option listed in this Paragraph. The Church may at any time change any Commercial Business in the Future Building to another Commercial Business in the same space(s), so long as the new Commercial Business or Commercial Businesses comply with the provisions of Paragraphs 7-9 and 13, including subparts.

32. The terms "Option 1," "Option 2," and "Option 3" in this Paragraph refer to the Options described in the preceding Paragraph 31. The Church may begin to use the Future Building for Church Purposes as soon as one of the two Commercial Businesses begins to Operate under Option 1, so long as the second Commercial Business begins to Operate within twelve (12) months of the first day the Church uses the Future Building for Church Purposes; or as soon as the one Commercial Business begins to Operate under Option 2; or as soon as the Community Youth Center begins to Operate under Option 3. Thereafter, the Church may continue to use the Future Building for Church Purposes so long as it Operates one or two Commercial Businesses or a Community Youth Center in accordance with the terms of this Consent Decree and the subparts to this Paragraph:

a. The Church will Operate one or two Commercial Businesses or a Community Youth Center in the Future Building in accordance with Option 1, Option 2, or Option 3, for eight (8) years (the "Future Term"). Under Option 1, the Future Term will begin the first day one of the two Commercial Businesses begins to Operate as long as the second Commercial Business begins to Operate within twelve (12) months of that day, otherwise the Future Term will begin the first day the second Commercial Business begins to Operate. Under Option 2 the Future Term will begin the first day the one Commercial Business begins to

Operate. Under Option 3 the Future Term will begin the first day the Community Youth Center begins to Operate.

          b. During the Future Term, in addition to Operating one or more Commercial Businesses or a Community Youth Center in a designated space(s) in the Future Building, the Church may use that same space(s) for Church Purposes, as well. If during the Future Term the Church ceases to Operate one or more Commercial Businesses or a Community Youth Center in the Future Building: 1) the Church will be unable to use that space designated for the Commercial Business or Community Youth Center until a Commercial Business or a Community Youth Center resumes Operation in that space, except the Church can use any Main Street entrance for entering and exiting, etc., and it can use any bathrooms; provided, however, that if the Church nevertheless uses the space for any purpose before it resumes Operation of a Commercial Business or Commercial Businesses or a Community Youth Center in that space, such use shall constitute a breach of this Consent Decree and of any permit issued for the Future Building pursuant hereto; 2) the time required for the Future Term will be tolled until a Commercial Business or a Community Youth Center resumes Operation in that space; and 3) the Church may use the rest of the Future Building for Church Purposes regardless of whether one or more Commercial Businesses or a Community Youth Center are Operating in the Future Building. If the Church ceases to Operate a Commercial Business or Commercial Businesses or a Community Youth Center in the Future Building but does not use the space designated for same for any purpose before it resumes Operation of a Commercial Business or Commercial Businesses or a Community Youth Center in that space, the Church shall not be considered to have breached this Consent Decree or any permit issued for the Future Building pursuant hereto.

The same provisions apply if the Church ceases to operate both Commercial Businesses under Option 1.

        c.      If during the Future Term the Church continues to Operate the one or two Commercial Businesses or a Community Youth Center but in a particular week it does not Operate the one or two Commercial Businesses or a Community Youth Center for the full 20 hours and is not otherwise permitted to Operate for less than 20 hours that week, the Church may choose to make up the missed Operating hours within the four subsequent weeks.

        d.      At the end of the Future Term the Church may at its discretion continue to Operate one or two Commercial Businesses or a Community Youth Center in the Future Building but is not required to do so to use the entire Future Building for Church Purposes indefinitely.

        33.      If the proposed Future Building complies with the requirements of Paragraphs 7-9, 13 and 21, including subparts, the Village shall approve the Church's permit applications related to the Future Building. The Village may not revoke its approval of the permit applications except upon the failure of the Church to cure any violation of the Church's duties regarding the Future Building as set forth in this Consent Decree, nor may the Village revoke any permits related to the New Building for failure of the Church to cure any violation of the Church's duties regarding the Future Building as set forth in this Consent Decree. The Village may not revoke its approval of the permit applications if the Church is in compliance with its duties regarding the Future Building as set forth in this Consent Decree. During the Supervision Period, the Church may challenge or appeal revocation of any of the permit applications as a violation of this Consent Decree and applicable law.

34. The Village shall not enact or amend any ordinance or other regulation or requirement inconsistent with the terms of this Consent Decree or that would prevent the Church from using the Main Street Properties as a multi-use facility or for Church Purposes as set forth in this Consent Decree.

**PAYMENT AND DISBURSEMENT OF FUNDS, COSTS AND FEES; RELEASE AND DISMISSAL OF ACTION WITH PREJUDICE**

35. The Village shall pay the sum of $500,000.00 (Five Hundred Thousand U.S. Dollars) (the "Funds") to this Court's registry within 30 days of the entry of this Consent Decree. The Funds shall remain in the Court's registry until distributed by order of this Court. The Church shall be responsible for notifying any and all potential claimants of the Funds of this Consent Decree and the location of the Funds. The Village takes no position on the apportionment of these funds between any claimant and shall have no further duty related in any way to disbursement once it pays the Funds into the Court's registry.

36. The Church and the Village shall be responsible for the payment of their own litigation costs and attorney's fees incurred in this litigation.

37. This Consent Decree is made in full satisfaction of the Church's claims contained in its Verified Amended Complaint and Demand for Jury Trial (Filing No. 13).

38. Each Party, on its own behalf and on behalf of its related and affiliated entities, successors, and assigns, and all persons or entities taking by or through it, releases, acquits, and forever discharges and holds harmless the other Party and its related and affiliated entities, and its present and former officers, directors, partners, members, managers, employees, attorneys, agents, contractors, successors, and assigns (collectively, the "Released Parties"), from and against any and all claims, rights, demands, actions, obligations, liabilities, and causes of action of any kind and every kind, nature, and character whatsoever, known and unknown, that either

Party may now have, or may ever have had, or may ever believe it has against the other Party and/or its Released Parties that arise from or relate to any acts or omissions by the other Party and/or its Released Parties occurring on or before the date of this Consent Decree, including without limitation all claims arising from or relating to the allegations in the Church's Verified Amended Complaint and Demand for Jury Trial (Filing No. 13). Notwithstanding the foregoing, nothing in this Paragraph shall excuse or release the Parties from their obligations under this Consent Decree or the Settlement Agreement. Each Party represents and warrants that the party has not assigned or transferred all or any part of the claims released by the party under this Consent Decree, and that the party is the sole and full owner of the claims released by the party under this Consent Decree.

39. Pursuant to this Consent Decree, the Church's Verified Amended Complaint and Demand for Jury Trial (Filing No. 13) will be dismissed with prejudice immediately upon the entry of this Consent Decree.

## FORCE MAJEURE AND DISCLAIMER OF WAIVER OF RIGHTS

40. Nothing in this Consent Decree prevents the Church from demolishing the existing structures on the Main Street Properties or constructing the New Building or Future Building if it is temporarily unable to do so, or from using the New Building or the Future Building for Church Purposes if one or more Commercial Businesses or a Community Youth Center in the New Building or Future Building is temporarily unable to Operate, due to Acts of God, such as fire, flood, or other damage; a natural disaster; a government-ordered closure; a court order or injunction sought by an individual or entity other than the Village; repairs to the property or equipment; or a similar reason beyond the Church's control. Nor will such event(s)

activate the tolling provisions of Paragraphs 18(b) and 32(b). However, business or financial reasons or exigencies unrelated to said Acts of God, etc., shall not qualify under this Paragraph.

41. The Parties agree that the Church does not waive any of its constitutional, statutory or other rights, such as its rights under RLUIPA, by executing this Consent Decree or any other agreement. The Parties also agree that the Village does not waive any of its constitutional, statutory or other rights, including its defenses and its authority to enact and enforce laws, ordinances, or regulations, by executing this Consent Decree or any other agreement.

## NON DISPARAGEMENT

42. No party to this litigation, or representative of any party, shall in any way denigrate or disparage any other party, any party's employees or agents, or party representative hereto by communicating, whether orally or in writing, any false, untruthful, or materially misleading representations regarding any other party hereto or their representatives.

## BINDING ON SUCCESSORS

43. This Consent Decree shall inure to the benefit of and is binding on the Church's and the Village's successors, transferees, heirs, and assigns.

44. The Church and the Village agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Consent Decree is illegal or invalid.

## ENTIRE AGREEMENT

45. This Consent Decree, including the attached Settlement Agreement (Exhibit 8), contains the entire agreement between the Church and the Village. No agreements or negotiations, oral or otherwise, between the Church and the Village that are not included herein

shall be of any force or effect. This Consent Decree may only be amended by the Court, however, the attached Settlement Agreement (Exhibit 8) may be amended by agreement of the Parties.

## CONSTRUCTION

46. The Parties warrant and represent that they have jointly drafted this Consent Decree, each with the assistance of their own counsel, and, accordingly, they agree that the Consent Decree shall not be construed against either party solely because such party is deemed to be the author of the Consent Decree. The Parties further represent and warrant that they have each read this Consent Decree and attached Settlement Agreement, understand the same, and execute it voluntarily and upon their own best judgment.

47. The section headings or any similar labels contained in this Consent Decree are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Consent Decree.

## CAPACITY TO BIND PARTIES

48. The undersigned representatives of the Church and the Village and their respective counsel represent and warrant that they are fully authorized to enter into this Consent Decree on behalf of the persons and entities indicated below.

IT IS SO ORDERED this _____ day of September, 2021.

BY THE COURT:

_____
Hon. Brian C. Buescher
United States District Judge

FOR THE DEFENDANT, VILLAGE OF WALTHILL, NEBRASKA:

BY:

_____
Michael D. Grant
Chairperson of the Board of Trustees of Walthill, Nebraska

AND:

_____
Jason W. Grams, #24596
LAMSON, DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, Nebraska 68114
Tel: (402) 397-7300
Fax: (402) 397-7824
jgrams@ldmlaw.com
Counsel for the Village of Walthill, Nebraska

DATED this ____1st____ day of September, 2021.

FOR THE PLAINTIFF, LIGHT OF THE WORLD GOSPEL MINISTRIES, INC.:

BY:

*[signature]*

William Paul Malcomson
Pastor

AND:

*[signature]*

Roger Byron, TX #24062643
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
rbyron@firstliberty.org
Counsel for Plaintiff

DATED this ___1st___ day of September, 2021.